Samuel M. Rosen v. Commissioner.
Rosen v. Commissioner
Docket No. 5376.
United States Tax Court
1945 Tax Ct. Memo LEXIS 133; 4 T.C.M. (CCH) 678; T.C.M. (RIA) 45221; June 28, 1945
*133 Benjamin Grund, C.P.A., for the petitioner. Francis X. Gallagher, Esq., for the respondent. DISNEY
Memorandum Opinion DISNEY, Judge: This case involves income tax for the calendar years 1940 and 1941, deficiencies having been determined in the amounts of $1,294.15 and $2,929.48, respectively. The only question presented is as to deductibility of the portion of salaries accrued upon petitioner's books and credited to the employees, but unpaid within the year or within two and one-half months thereafter. [The Facts] The parties filed stipulations which we adopt by reference and make a part of our findings of fact. In material part such stipulations agree that: "1. Petitioner, throughout the years 1940 and 1941, was the sole proprietor of a retail furniture business conducted on the installment basis, under the name 'Rosen Supply Company' at 163-165-167 Main Street, Bradford, Pennsylvania, and the books of account of said business were kept on the accrual basis. Petitioner filed his returns for the years 1940 and 1941 on said basis with the Collector of Internal Revenue for the Twenty-third Collection District of Pennsylvania, at Pittsburgh, Pennsylvania. *134 "2. Petitioner employed his father, Morris Rosen, and his brother, Arthur Rosen, in said business during 1940 and 1941. "3. On petitioner's books of account and federal income tax returns for the years 1940 and 1941, the compensation of said Morris Rosen and Arthur Rosen for their services rendered to petitioner in said business in 1940 and 1941 was accrued and deducted as follows: Morris Rosen
Arthur Rosen
1940
$7,500.00
$ 460.80
1941
7,500.00
1,580.05 Morris Rosen and Arthur Rosen reported said amounts as income in filing their tax returns for the years 1940 and 1941, respectively. The amounts actually paid in cash and the balance remaining unpaid against said compensation during 1940 and 1941 were as follows: Morris Rosen
Arthur Rosen
1940
Paid
$2,293.39
$ 85.61
Balance
5,206.61
375.19
1941
Paid
3,445.16
810.95
Balance
4,054.84
769.10 Respondent disallowed the aforesaid amounts shown as 'Balance' in determining the deficiency herein. "4. On August 14, 1941, petitioner executed a power of attorney in favor of his father, Morris Rosen, and filed said power of attorney with the Bradford National Bank, Bradford, Pennsylvania. *135 Morris Rosen also filed on August 14, 1941, a signature card with said bank. A photostatic copy of said power of attorney and signature card is attached hereto as Exhibit A-1." The power of attorney referred to provided, in part, that the petitioner constituted Morris Rosen his attorney. "1. To draw checks against checking account in the Bradford National Bank, Bradford, Penna., for cash to his own order, or to the order of another. "2. To draw checks against savings account in the Bradford National Bank, Bradford, Penna., for cash to his own order, or to the order of another. "3. To endorse Certificates of Deposit for renewal or collection in full or in part. "4. To endorse notes, checks, drafts or bills of exchange which may require endorsement for deposit or for collection in said Bradford National Bank. "5. To draw and accept all drafts or bills of exchange. "6. To waive demand, protest and notice of protest on all notes, checks, drafts or bills of exchange. "7. To do all lawful acts requisite for effecting these premises and in executing the powers hereunder my said attorney may from time to time, draw checks or drafts to his own order; against my account with *136 the Bradford National Bank, Bradford, Penna., and if he sees fit may deposit such checks and drafts, or Certificates of Deposit or any of them to the credit of any account in his individual name, hereby giving and granting unto my said attorney full power and authority to do and perform all and every act and thing whatsoever requisite and necessary to be done in and about the premises as fully to all intents and purposes as I might or could do if personally present, with full power of substitution and revocation, hereby ratifying and confirming all that my said attorney, or substitute shall do or cause to be done by virtue hereof." The signature card referred to read as follows: Name Rosen Supply Co. [Sgd.] by Morris Rosen It was further stipulated, in material part, that on December 31, 1940, and December 30, 1941, the assets and liabilities of petitioner were as follows: Dec. 31,
Dec. 31,
1940
1941
Assets
Current
Cash on hand and in
bank
$ 2,861.74
$ 4,398.50
Cash in transit
5,355.63
Trade accts. receivable
90,456.73
99,038.24
Merchandise
29,554.31
41,729.16
Defense Bonds
131.25
Total current assets
$122,872.78
$150,652.78
Fixed
4,241.99
4,375.30
Prepaid interest
834.01
Liabilities (other than
capital)
35,289.57
38,856.64
Deferred income from in-
stallment sales
19,275.02
24,857.24
*137 We further find from evidence adduced, as follows: On the books of the petitioner, Morris Rosen and Arthur Rosen were, on their personal accounts, credited with the amounts of salary above stated and charged with the amounts paid as above set forth. The cash in transit on December 31, 1941, was received January 3, 1942. At the beginning of the year 1940 petitioner and his father agreed that the father's salary should be $7,500 per year and it has never changed. Most of petitioner's collections in his retail furniture business are in cash. His father and brother Arthur had access to cash collections in the store, and when they wished money, did not have to ask petitioner for it. In general, they went to the cash drawer when they wanted money. At times petitioner would have $1,000 cash a day in his cash drawer. Petitioner's father and mother and his brother Arthur, who was single, lived with him in a house owned by the petitioner. Petitioner paid the expenses of the house, and for food, clothing, shelter and recreation, and practically all of the bills of his father and mother. His father did not need his permission to take cash, for his salary or in greater amounts. After August 14, 1941, the *138 date of the power of attorney, his father had access not only to the cash in the drawer, but to the cash with the business bank account with the Bradford National Bank, and could after that date have drawn checks against that account. The petitioner in 1941, after June 1941, had a line of credit with Commercial Investment Trust, Inc., of New York City. They wanted to lend him $25,000, but he borrowed, in 1941, $15,756.85, which has since been repaid. Under the facts in this case, we think it is altogether clear that the petitioner should be allowed the deductions claimed. No question is raised as to the rendition of the services or to the reasonableness of the compensation therefor. There was accrual by the petitioner, who was on the accrual basis of accounting; there was crediting to the two employees, the father and brother; and there was actual availability of the funds to them at any time, for they could have gone to the cash drawer and taken out their salaries, without asking permission of the petitioner. The petitioner was in sound financial condition and had an established line of credit, both sufficient to cover the salaries here involved. That there was not actual cash on *139 hand at the end of the year sufficient to cover the amounts does not prevent constructive receipt and payment. Valley Tractor & Equipment Co., 42 B.T.A. 311; A. D. Saenger, Inc. v. Commissioner, 84 Fed. (2d) 23; Jacobus v. United States, 9 Fed. Supp. 46 (Court of Claims). We think this case falls clearly within the ambit of Michael Flynn Manufacturing Co., 3 T.C. 932 (except of course as to the fact of small amount of cash, covered by the cases just cited). See also Ohio Battery & Ignition Company, 5 T.C. 283, promulgated June 19, 1945. We therefore hold that the Commissioner erred in denying the deductions taken for the salaries of the two employees. Decision will be entered for the petitioner.